In the Matter of the Probate of the Will of FRANCIS W. LASAK, Deceased.

In a proceeding for the probate of a will, all the parties cited can become actors therein, and any of them may contest and produce witnesses in opposition to the probate, or offer witnesses in support of the will, and cross-examine those called in opposition thereto, and while in such a case, if all the parties cited, being of full age, should ask that the proceedings be dismissed, no one appearing in opposition, or if all the parties cited should formally admit that the will was not legally executed, or that the testator was incompetent, it would be the duty of the surrogate to dismiss the proceeding; so long as any person cited is before the surrogate in support of the will, he has no right, on motion of any other party, arbitrarily to arrest or dismiss the proceedings.

Upon proceedings for the probate of the will, C., a daughter of the testator, who was given, under the will, a life estate in the income of one-third of the residuary estate, and in case of intestacy would have taken one-fifth of the whole estate, and I., a granddaughter, appeared as contestants. I. called C. as a witness, who gave evidence as to personal transactions and communications with the testator. This testimony was struck out by the surrogate. C. then withdrew from the contest and withdrew her appearance. The surrogate still held her incompetent to testify as to any personal transactions or communications with the testator. *Held*, no error; that it rested in the discretion of the surrogate whether to strike out said testimony or not; that, under the circumstances, he might assume that C.'s interests would be promoted by the success of the contest, and hence the testimony was incompetent. (Code Civ. Pro. § 829.)

Reported below, 57 Hun, 417.

(Argued February 10, 1892; decided March 1, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 18, 1890, which affirmed a decree of the surrogate of the county of Westchester, admitting to probate the last will and testament, and codicils thereto, of Francis W. Lasak, deceased.

The following is the opinion in full:

"Francis W. Lasak died in Westchester county on the 13th day of February, 1889, a very old man, leaving as his sole heirs and next of kin four daughters, Mrs. Cuthbert, Mrs. Chauvet, Mrs. McKensie, and Mrs. Schemerhorn, and one granddaughter, Mrs. Ives. He left a very large estate which

he disposed of by a will dated February 11, 1873, and by seven codicils thereto dated successively February 24, 1874, October 7, 1874, February 1, 1878, December 5, 1878, February 18, 1881, October 16, 1882, and April 14, 1884.   He gave to Mrs. Cuthbert one-third of his residuary estate absolutely, to Mrs. McKensie and Mrs. Chauvet a life estate in one-third, and to Mrs. Schemerhorn the income of $30,000 during her life; and he appointed John G. Wendel executor.

"The executor petitioned the surrogate of Westchester county for probate of the will, and all the parties interested were cited. Mrs. Schemerhorn filed objections to the probate, specifying that the will was not properly executed, that the testator was not of sound mind, and that the execution of the will was procured by fraud and undue influence.   The surrogate after hearing the proofs admitted the will to probate, and his decision has been affirmed at the General Term.   The contestant has appealed to this court, and here she assails the surrogate's decree on several grounds, none of which after careful consideration, we believe to be well founded.

"The surrogate did not err in finding that the testator was mentally competent and free from undue influence at the date of the will and codicils.   The will and the successive codicils show a persistent scheme in the mind of the testator for the disposition of his property.   For some reason which he deemed adequate, at a time when no one questions his competency, he determined to discriminate against the contestant.   He gave her in his will the income of but $20,000, which he subsequently in the third codicil increased to the income of $30,000.   There is no evidence showing any mental or physical failure on the part of the testator at the date of his will.   The contestant gave some evidence that subsequently to that date he manifested great eccentricities of character, frequent lapses of memory and some decay of his intellect.   That evidence standing alone might have justified the surrogate in refusing probate to some of the codicils.   But opposed to that was the evidence of the subscribing witnesses, all men of intelligence who had known the testator well for a long time, who testified to the execution of the will and codicils under circumstances which forbid the inference of undue influence or fraud, and their

evidence standing alone does not warrant a suspicion even that the testator did not have a sound and disposing mind down to the date of the last codicil. With all the other evidence must be taken the undisputed fact, entitled to great weight, that the testator was left by his children in control of his large estate, and that he continued to manage and care for the same, so far as appears, in an intelligent and satisfactory manner to the time of his death. Under such circumstances the testator's competency was at least a question of fact for the surrogate, and his findings having been affirmed at the General Term, we have no jurisdiction to interfere with them.

"In the Surrogate's Court, upon the return of the citations, besides the executor and Mrs. Schemerhorn, the three daughters, Mrs. McKensie, Mrs. Chauvet and Mrs. Cuthbert, also appeared by their respective attorneys. After the subscribing witnesses to the will and all the codicils had been sworn and fully examined on behalf of the proponent, and cross-examined on behalf of the contestant, the counsel for the executor moved the surrogate to dismiss the proceeding for probate of the will, and to dismiss him from the proceeding. He gave no reason for the motion, and his reason therefor is not apparent. The counsel for the contestant consented, and urged that the motion be granted. The counsel for Mrs. McKensie and Mrs. Cuthbert then announced that they appeared in support of the will, and counsel for the Children's Aid Society, a legatee, also announced that he appeared in support of the will. The surrogate decided to hold the motion under consideration. The parties who thus became proponents of the will then rested their case, and the counsel for the contestant was directed by the surrogate to proceed with his evidence. Subsequently the surrogate denied the motion to dismiss the proceeding, and the counsel for the contestant excepted to the ruling, and he now claims that that ruling was erroneous. After the petition was filed with the surrogate and the proper parties had been cited and were before him, he had jurisdiction of the subject-matter and of the parties. It was a proceeding *in rem.* to prove the will. All the parties could become actors therein. (Code, § 2617.) Any of them could contest and produce witnesses in opposition to the probate, and any of them could offer wit-

nesses in support of the will and cross-examine the witnesses called in opposition thereto. In such a case, if all the parties cited, being of full age, should ask that the proceedings be dismissed, no one appearing in support of the will, it would be the duty of the surrogate to dismiss the proceeding. The same result could be produced if all the parties cited should formally admit that the will was not legally executed, or that the testator was incompetent. But so long as any person cited is before the surrogate in support of the will, he has no right, upon the motion of any other party, arbitrarily to arrest or dismiss the proceeding. After the proceeding is once instituted, and the parties cited are before the surrogate, it is not solely the proceeding of the proponent. It is a proceeding in behalf of all the parties interested to prove the will. If the proponent should die, the proceeding would not abate. If he left successors to his interest, they would have to be brought in and be made parties to the proceeding as persons interested in the estate. If the proponent should refuse to introduce any evidence in support of the will, any other party could produce and examine the witnesses.

"In ordinary actions it is not always the absolute right of a plaintiff to discontinue his action. In all cases where a defendant becomes an actor and is interested in the continuance and trial of the action, as where he sets up a counter-claim or sets up a claim to property which is in litigation and asks in his answer affirmative relief in reference thereto, he may resist the discontinuance of the action and then it rests in the discretion of the court whether or not the plaintiff shall be permitted to discontinue it. (*Carleton* v. *Darcy*, 75 N. Y. 375; *In Matter of Waverly Water Works Co.*, 85 id. 478.) So here it was, at least, in the discretion of the surrogate whether or not he would dismiss the proceeding on the motion of the executor.

"The counsel for Mrs. McKensie and Mrs. Cuthbert cross-examined the witnesses of the contestant, and they assumed the position of proponents of the will, and if they had failed in sustaining the will the surrogate could have awarded costs against their clients, who were the adversaries of the contestant.

"After motion to dismiss was made on behalf of the executor, Mrs. Chauvet appeared as a contestant, Mrs. Ives, the grand-

daughter, also appeared as a contestant, and she called Mrs.
Chauvet as a witness in opposition to the will.    Mrs. Chauvet
was sworn as a witness and gave evidence bearing upon the
contest of personal transactions and communications with the
testator.    After she had given considerable evidence, the
counsel who supported the will made a motion to strike out
her evidence, and the surrogate made the following ruling as
entered in his minutes:  ' Objections heretofore made by
counsel for the proponents to the testimony of the witness Mrs.
Chauvet, so far as the same relates to personal transactions or
communications between the witness and the late Francis W.
Lasak, are sustained, and so much of the testimony of the wit-
ness as relates to such personal transactions or communications
is hereby ordered, upon motion of counsel of the proponents,
stricken out.'    To this ruling the contestants excepted.    Mrs.
Chauvet then withdrew as a contestant and also withdrew her
appearance, and the surrogate still ruled that she was not com-
petent to testify to any personal transactions or communica-
tions between her and the testator.    It is claimed that the sur-
rogate had no right to strike out evidence which had been
received without objection.    While the record of Mrs. Chauvet's
evidence, which was stricken out, shows no objection thereto,
the surrogate in his ruling recites that objections thereto had
been made, and this recital was not at the time challenged as
untrue, and must now be assumed to be true.    But when evi-
dence has upon any trial been received without objection, the
trial judge may, in the exercise of his discretion, subsequently
strike it out, if it was incompetent when received.    The dis-
cretion in such a case must be so exercised as not to mislead,
or place at a disadvantage, the party who gave the evidence.
Mrs. Chauvet was incompetent, under section 829 of the Code,
to give evidence of the personal communications and trans-
actions, if her evidence was in her own interest — that is, if it
was for her interest to defeat the will and thus cause the intes-
tacy of her father.    Under the will, she took for life the net
income of one-third of the residuary estate.    In case of intes-
tacy, she would take absolutely one-fifth part of her father's
whole estate.    No proof was given before the surrogate to
show which was of the most pecuniary value, the income of

the one-third or the absolute ownership of the one-fifth. It does not appear how old she was, but from the extreme age of her father, we may suppose that she had reached, at least, middle life, and as she was before the surrogate, he could see about how old she was. From the fact that she at first appeared as a contestant, and at all times appeared to desire the defeat of the will, shows that she thought that her pecuniary interests would be promoted by defeating probate. Under such circumstances, we ought to assume, as the surrogate undoubtedly did, that the absolute ownership of the one-fifth was of greater pecuniary value than the net income of the one-third, and that her pecuniary interests would be promoted by the success of the contest before the surrogate, and hence the ruling of the surrogate was right.

" The other allegations of the appellant against the decree of the surrogate need no particular attention here, as it is very clear that they point out no error.

" The judgment should be affirmed, with costs in this court against the appellant personally."

*Robert Sewell* and *Aaron Kahn* for appellants.

*Edgar M. Johnson* for respondents.

EARL, Ch. J., reads for affirmance.
All concur.
Judgment affirmed.

---

THOMAS H. GREER, Individually and as Executor, etc., Appellant, *v.* ALDEN CHESTER, as Executor, etc., et al., Respondents.

(Argued February 10, 1892; decided March 1, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made December 28, 1891, which modified, and affirmed as modified, a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.